311-0008 James and Mary Schafer, appellant Dr. Boland v. Unionbank Central, appellee Timothy Howard Mr. Boland Good morning May it please the court, Mr. Howard My name is Roger Boland with the firm of Boylan Boland in Hennepin, Illinois And I am here today representing the original plaintiffs in a piece of litigation out of Bureau County, Mary and Jim Schafer I would also point out to the court that Mr. and Mrs. Schafer are here in the courtroom today for our argument I want to start with a brief factual background so that the court has a little better understanding of what has transpired here in the legal issues I don't think those factual issues are in dispute In April of 2003, Mr. and Mrs. Schafer borrowed $30,000 from the Unionbank, now Centrubank They signed a promissory note and a commercial security agreement at the time they acquired that loan Pledging, among other things, their farm equipment and machinery to secure repayment of that loan Now that loan had a single maturity date, I think about six months later But the loan was retired and paid in full within one month So in May of 2003, the loan was paid off Now, it's the preparation of the commercial security agreement that creates the problem that has led to this lawsuit Specifically, the commercial security agreement form has two boxes One of which should be checked One box, if you check, indicates that the collateral was pledged or is pledged to secure repayment of a specific loan The second box, which can be checked, is checked if you are pledging the collateral to secure all debt Well, unfortunately, in this case, the bank loan officer who prepared the document checked the wrong box He checked the box for all debt Is that Mr. Hunt? I'm sorry? Is that Mr. Hunt? Yes, Jeffrey Hunt was the loan officer that originated the documents And therein lies our mutual mistake Mr. Hunt signed a brief statement early in the process and subsequently an affidavit He also gave testimony in a deposition at the request of Mr. Howard And Mr. Hunt consistently indicated that the lien which the bank had was to survive only the loan in question In other words, he acknowledged checking the wrong box That the lien was then going to expire when the April 2003 loan was retired That would have been in May Now, Mr. Hunt goes on candidly to acknowledge that he overlooked That was the word he used in his deposition He overlooked releasing the lien that the bank held I mean, at these other debts that the bank ultimately said were to fall within years Did those pre-date or post-date the loan which was subject to this agreement? I believe they came later And the, you're talking about the unrelated real estate mortgage loans I believe that the loans came later The collection efforts certainly came later Do you think that makes a difference? No, as to the origin of the loan? No, well, at the time Justice Smith's question No, I don't Do you think that maybe the fact that the bank already had this collateral agreement for all debt Made a difference whether they would have demanded a similar agreement on those newer loans? Well, the new loans were real estate mortgage loans secured by specific parcels of real estate They're completely unrelated to this short-term loan that Mr. and Mrs. Schaefer acquired in April of 2003 Is that for equipment? They're not purchase money mortgages, no This was just, there was a cash flow issue Because roads were posted and Mr. Schaefer needed some cash flow and that's why he got it Now, let us be clear The bank is not suggesting, has never suggested in fact That the commercial security agreement as drafted Accurately represents the agreement of the parties So, we come here to this court In a posture where it is uncontradicted That the commercial security agreement does not represent the agreement of the parties Now I think that fact creates a practical impossibility For the defendant to successfully complete its defense Which should have been another reason for the trial court to deny the motion for summary judgment I'll speak to that in a minute Now, so let's fast forward about two and a half years To December of 2005 At that point, the bank effected a non-court ordered repossession Of the plaintiff's farm equipment Now that was accomplished when a different loan officer Who had no knowledge of the April loan That loan officer literally discovered The promissory note and the unreleased commercial security agreement in a credit file Now that promissory note had a stamp on it Indicating it had been paid in full in May of 2003 It had Jeff Hunt's initials on it And rather than go down the hallway And find out what the circumstances were Surrounding this document that he discovered He got on the phone and he arranged for repossession of the plaintiff's equipment Let me ask you something Mr. Bowen Is there anything ambiguous about that document? No Let's crank this up a notch for a second And just suppose this is Wells Fargo Bank and not a local bank The bank officer finds a document that is very unambiguous You're saying he's got a duty to run down and ask the other bank officers what this document means? Well when he has no knowledge of the circumstances And he finds it in a place where he didn't expect to find it And he didn't expect to find this He was putting together information For purposes of giving information to his lawyer On unrelated mortgage foreclosures that they were contemplating And he finds this document He doesn't know anything about it by his own admission And rather than go down the hallway and ask his colleague He got on the phone and he had the equipment repossessed I think that's poor business And your reference to Wells Fargo is interesting Because we are in an age now With robo-signatures of loan documents And we hear daily about the miscarriage of justice And the errors of bankers all over the country Now I'm not casting any personal aspersions on anybody here But it's interesting that you bring that up It would have been prudent for Mr. Sindelbach The collection agent of the bank To go down the hallway And find out what there was about it Now, despite our best efforts The bank went ahead and sold that equipment In March of 2006 They repossessed it in late December And they sold it at a public auction In Anaheim, Illinois in March We sought an injunction from the trial court And we were denied Now, we find ourselves in discord Because the trial court in Bureau County Granted the defendant's motion for summary judgment In relation to our second amended complaint Now I think it's important In this case to note the nature Of the cause of action Contained within our second amended complaint Because that bears on the applicability Of the Illinois Credit Agreements Act Which is what the bank is using as a shield in this case The plaintiff sued in this case The second amended complaint Was a suit for conversion A common law action for conversion Of tangible personal property As such, the Illinois Credit Agreement Is not involved The court erred in that regard The statutory language Of the Illinois Credit Agreement Act Prohibits a debtor from maintaining An action on or in any way Related to a credit agreement Well, this isn't an action on Or in any way related to a credit agreement The American Consolidated Transport case Which we cited in this court Makes it clear that Unless the action is solely related To an unwritten credit agreement You do not implicate the language Of the Illinois Credit Agreement Act Now that wasn't the credit agreement The basis of the repossession Which was the basis of the sale of the Well, that's what the bank says Understand the language of the statute Precludes the debtor From bringing an action on Or in relation to a credit agreement Our action isn't related to a credit agreement The proof that we're going to have to show If we get to that point Is that we own the equipment We had possession of it And the bank took it Now, interestingly, it's the bank Which raises an affirmative defense That is, their commercial security agreement They rely upon the validity And the efficacy of the credit agreement To support what it did The debtor isn't raising the issue It's the bank The bank's got to plead and prove That it had a right to repossess the equipment At the time and place where it did In order to sustain its affirmative defense Now, herein lies What I think is the practical problem That I referred to a minute ago Let's keep this in context If we get to a trial The plaintiff is going to put on evidence In relation to its ownership of this equipment Where it was, and the value Now then, the case is going to shift To its affirmative defense And at that point, the defendant To sustain its affirmative defense Is going to have to present evidence Of the validity Of its commercial security agreement And therein lies its problem Because the bank is not going to be able To put on any witness Who has personal knowledge Of the origin and execution Of the commercial security agreement That's going to support its case There are three people What about a business record? There are three people in the world Who know what happened Jeff Hunt, Mary Schaefer, and Jim Schaefer Is knowing what happened A foundational requirement for a business record? Well, understand that Let's say they bring some corporate individual In an attempt to authenticate the document that way The first question is going to be Do you know anything about this document? No, they don't We have excluded everybody else in the world Other than Jeff Hunt, Mary Schaefer, and Jim Schaefer And so the bank is going to have A practical problem To authenticate the document As an agreement of the parties Is that a requirement For a foundation of a business record? I believe that it is They have nobody to offer I want the foundation for the business record I know where our records are kept I want to know where our records are normally kept This document is kept there And it's kept in the ordinary course of our business Well, I could keep a menu To a local restaurant in a file But if you do it as a course of business Then it comes in I see it Isn't the issue whether there was An agreement in the first place? No, there is no issue on that And therein lies a distinction Between some of the cases And this case And you remind me of I thought your brief said that That essentially there's no agreement here To be a defense Under the print security No, I What I would say is That there's no disagreement That there was There was a meeting of the minds In relation to a loan A lien And the duration of the lien The problem is The document in question Does not reflect the parties agreement Right, and if there's a mutual mistake That's what I understand You're arguing that there was a mutual mistake If there's a mutual mistake There's no agreement to begin with No, there was an agreement That's valid Under mutual mistake No, I disagree with it Is that the law? No, I believe in order to show Mutual mistake you get into reformation I think you have to show That there was in fact an agreement And the document does not reflect it Okay, but doesn't that vitiate the agreement? No Ultimately? No, there was an agreement here To loan money, the money was loaned It was repaid And that the collateral pledged Under the security agreement Was to be pledged For purposes of this loan And this loan alone That was the agreement of the parties And there is no disagreement on that point Counsel has two minutes I was going to make reference To what a law school professor Kept preaching to us a number of years ago Long ago now that I'd like to recall He kept saying Peel back the layers Until you get to the heart The heart of the artichoke in this case Is whether the credit agreement act Precludes evidence of mutual mistake Mr. Howard and his clients Suggest that it does However, there is no legislative history That supports his position And there's no case law That supports his position There are 17 reported decisions Interpreting this statute One from this court in 1997 There are no cases Other than the Rossetti case Out of the fourth district Regarding the relationship Between mutual mistake And the Illinois credit agreement act And in that case The fourth district remanded The cause back to the trial court For what purpose To have a hearing On a question of whether A mutual mistake Caused the liability under guarantee To be fixed at an unlimited amount Or $300,000 amount Now that Rossetti case Is the only case as I say That has that relationship And what we take from that case Is that the credit agreement Does not trump The concept of mutual mistake Historically in this state Why is that? I'm sorry? Why is that true? That the statute doesn't Does not trump it The statute Why is that true? Well, if we want to try And do what's right If there is evidence Of mutual mistake Isn't it because There's no contract There's no valid contract In existence Well, there's no writing That evidences that I mean, if you have the contract Go ahead, I'm sorry We have a lot of jurisprudence In this state That allows for evidence Of mutual mistake In the teeth of the parole evidence rule In the teeth of the statute of frauds Our legislature could have But did not repeal All of that jurisprudence With the adoption of this statute Is this You'll have some rebuttal time I think, Mr. Bowen I'll take advantage of it All right, thank you Mr. Bowen Mr. Howard Thank you May it please the court, counsel My name is Tim Howard I represent Central Bank Which was formerly known as Union Bank The issue in this case Is fairly straightforward Was summary judgment properly granted Because the bank was the perfected Secured lender of the plaintiffs And their security agreement Specifically authorized the bank To repossess the collateral upon default I have three points to make But before I do that I want to answer a question The court asked Mr. Bowen With regard to the other loans In fact, it weaves into my first point Which is the plaintiffs here Were or are sophisticated Commercial borrowers They had, prior to the repossession Of those loans And I made an effort To put the 18 foreclosure complaints Into the court's record It's in volume 3 As part of a request to take judicial notice Attached to them are all the notes And the mortgages If the court looks at Also made part of the record Mr. Schaefer's deposition And the exhibits If the court looks at deposition Exhibit number 3 It's a nice little summary Of the 18 loans 5 of which were originated In the year 2000 12 of which were originated I'm sorry, 5 in the year 1999 12 originated in the year 2000 And 1 originated in the year 2002 And then we have this April 2003 loan In which they executed The commercial security agreement Before short-term financing And then by December of 2005 All of those 18 commercial loans Had been in foreclosure The plaintiff's claim That the conversion action Does not relate to any written agreement With the bank Because there's no valid security agreement The bank heartily disagrees The right to repossess the plaintiff's property Depends upon the validity Of the bank's security agreement And as noted at page 14 of our brief I put out the deposition testimony Mr. Schaefer Which I think provides the foundation For the introduction Of the commercial security agreement The original commercial security agreement And he saw his wife sign The original commercial security agreement At that deposition I didn't just have the copy That's attached as Exhibit E to the complaint I got the original document Because the longer version And put it in front of him So he could see the ink on the signature Now, the court wants these borrowers To rewrite the security agreement The second point is More than two and a half years After the security agreement was signed Mr. Hunt, that was his loan officer Mr. Hunt provides them a plaintiff In February of Provides the plaintiffs an affidavit In February of 2006 Now, even though Mr. Hunt No longer works for the bank He's left and gone to another bank In Princeton He claims there was a signed deal And that it was the bank's Intention to release the lien After the April 2003 loan was repaid But, in his deposition He admitted there's nothing in writing About the reported agreement Isn't that all have to do with proofs If it goes to trial? Well, it's inadmissible evidence That's the purpose of The Unway Credit Security Agreements Act Is to stop the Well, I mean, that's Let's get into that The Unway Credit Security Agreements Act Has to do with Largely, at least all the cases That you cite and all the ones That I've found Has to do with statute of frauds It's not limited to statute of frauds But all those cases have to do That I've found, at least And have to do with the statute of frauds And that's clearly the main thrust Of the case Of the statute Now If he's pleading And I have this little argument With Mr. Boland But it seemed to me In reading his briefs That what he was saying was That the mutual Mistake Vitiates the contract itself Because there's no mutual assent Not like I mean, if there was fraud If there was duress If there's a mutual mistake You don't have a valid contract You don't have a valid contract The Credit Security Agreements Act Doesn't apply If I hold a gun to your head and say Check this box Or I'm going to blow your brains out And you check the box And then sign it That doesn't make it a valid contract And I will agree with you I think that sort of duress That sort of duress says No contract came into existence In the first place But that's not what happened here Let me jump to my third point The plaintiffs didn't raise the argument As to mutual mistake in their pleadings Until three years after they filed their complaint Up to that point They alleged in their complaint That there was a signed deal Now, under the Credit Agreements Act It was designed to prevent Oral signed deals And to be proved In order to change the written Unambiguous terms of the credit agreement Between the parties And what they're suggesting here Is this court Be the first court To find an exception In the Credit Agreements Act Which is extremely broad It's not just limited to statute of frauds That don't apply to the statute of frauds The fact is You've got to have a valid contract Before the act applies But he admitted it was a valid contract He admitted he read it He signed it And then all along Their pleadings admit That there was a true, genuine, and correct That he granted security interest In the equipment To secure this loan He says that And then he says That it doesn't cover all debts But rather a specific debt And again I'll tell you That I believe To permit this kind of argument A mutual mistake To circumvent the purpose Of the Illinois Credit Agreements Act Which was to keep lending Boy Scouts simple You borrow the money You pay it back Is to say Okay, they can't get it By claiming the way It was Again, if their case is proven It is the crux of the deal That the box A was See, I disagree I think the crux of the deal Is we loan you money You give us collateral That's the crux of the deal And in this instance This security agreement I mean, your honor Look at the original It's a big box here I understand But I think If they prove that Then there's an issue As to whether the agreement Is in fact covered And my position is They can't prove it Because the testimony Is inadmissible It's inadmissible because The Illinois Credit Agreement Act says it's inadmissible Let's get back to the gun at the head Are you saying that Does nothing to do with What's happening in the facts in this case And I have to deal with the facts in this case The facts in this case is Oh, we weren't supposed to check this box We were supposed to check that box And yet He read it Before he signed it He signed it And it's not until February of 2006 That he says Check the wrong box Even the banker, the former banker Said he read the agreement Before they closed the transaction Exactly, I mean, realistically Mr. Howard, I mean You sign the agreement And it's gone You pay it off a year later And it's gone You don't then re-read it And say it's the wrong thing Until something happens Like your property gets And I asked the banker I said, did you terminate the UCC filing No Did the banker terminate the UCC filing Well, Mike, I submit to you It's actually I think it's ironic that this whole issue Doesn't arise until You know, the banker's left And now it's Repossession takes place in December Now in February we get this affidavit And again I'll submit to the court When did the banker leave January 1st of 2006 Okay, and this was discovered in December By what, the collections agent Well, I don't know the exact date But it was reported to the file In the fall of 2005 Because the foreclosures And I filed all those Were filed in like November or December So, you know, as is often done in banking You give it to a special assets guy And he takes care of the collection Because the guy who makes the loan Is not very good at collecting the loan He has too much of himself personally involved in it What if any binding effect is there Of saying this is a true and accurate copy Of the penetrator Well, you know My opinion is If they've made that statement In their pleadings initially That that should be an admission against them Now, I didn't look at that specific issue But I seem to recall That you can try to go back And change the pleadings And say it's not this I did not look at that issue And I apologize to the court But my view of the law generally Is that if you make an admission It's true and correct You should be bound by it If I may I want to make one more point I don't know what my time is But he mentioned the Bank One Versus Rosati case Supports their claim that The credit agreement does not preclude Evidence of mutual mistake That's not what that case holds Instead, as Judge Horak wrote In his decision The instruction to the trial court For further proceedings Was not a statement that all evidence Is admissible to prove mutual mistake In that remand for further proceedings And I would submit again That, you know Mr. Schaefer admitted He had read the security agreement Before he signed it Mr. Hunt was a former employee of the bank When he came forward with his affidavit He was an employee Who never terminated the UCC And to permit now This new theory of mutual mistake You can now walk around The Illinois Creditor's Agreements Act And say, okay, we're going to Go to court, which is To modify the express Unambiguous term security agreement By declaring, oh There was a mutual mistake And I think that that's why The current case that we cite Is such an important case Because there The borrower's claim The banker orally promised To obtain insurance for equipment That was pleasures collateral But failed to do so When a fire destroyed Because the written agreement Did not obligate the bank To procure the insurance The banker's statement That she would take care of it Was an impermissible modification Of the agreement between the parties Now the whole purpose Of the Illinois Creditor's Agreements Act Is to eliminate These lender liability claims And we've been pretty good at it Particularly the last ten years We've had many cases And I know he cited A lot of litigation companies Versus RBS citizens In his argument today And that case was a lender liability case But if you go read the whole thing Judge Schmitter just He wipes out by 12b Six motions to dismiss All of these purported lender liability claims And then he sort of tails At the end there as to some discussion About the Illinois Creditor's Agreement Act Which in my opinion Was totally unnecessary in his dicta Because he's already dismissed these claims Which he made When he dismissed all these lender liability claims That the bank was overbearing And forced him to go into A forbearance agreement And all these other sort of wild notions I guess in conclusion I'd like to say is that The credit agreement between the parties Is unambiguous The plaintiffs cannot now complain That merely because the bank Exercised its right To say that this court Should rewrite the agreement And what is the rewrite of the agreement That they want? I mean again All they want to do is They want you to take the agreement Move the x in this box Move the x up here to this other box This is not something where It's small print Gee I read the agreement I didn't see it didn't understand it I mean it's there in the very first paragraph And now they're saying We have this understanding No The purpose of the credit agreement Is to make it crystal clear You borrow money You pay it back These are the terms and conditions By which you're obligated to the bank That's the last two minutes If the court has any further questions Well let me just say So These other mortgage laws Predated the Execution of this document Yes Probably irrelevant But still Why didn't the bank ask for This commercial This agreement When it issued one or more Of those loans to Newark Well I suspect it was just Either a straight forward Commercial real estate loans Probably I think in Newark you can see A lot more rental houses And basically the valuation The lending practices In commercial or rental real estate That's your collateral Your principal source of repayment Is the rentals And then the secondary source Is the value of the property But this loan here Is sort of a working capital loan Because you look through the depositions And it talks about You know It's a different type of commercial loan Thank you Mr. Bowen If I had a half an hour I would take it all We could do it As my now late partner Durley Boyle said We have a lot to say Mr. Howard Spoke about the sophistication Of our borrowers here Well I suspect the loan officer Who worked at the bank Was at least as equally Sophisticated as the borrowers And between them all They made a mistake Now Justice Linton This is not a contract This is a copy Of the commercial security agreement Is this the contract Between the parties The answer to that is no So to that extent If that's what you were getting at I agree with you This is not the contract Between the parties It's what they signed But it isn't their contract Now Mr. Howard And in the brief We refer to pleadings As being a true, correct And genuine copy It is in fact The true, correct And genuine copy Of what they signed To that extent I agree with you It isn't the agreement however So I think it's a little Disingenuous for Mr. Howard  That because we refer to A document attached to a pleading As a true, correct And I think it's plain From our pleadings and our briefs That our position is This is the paper But it's not the deal And Mr. Howard doesn't come to you today And say that it is He says well it's a piece of paper that's signed And so we have to live with it Now this document says $30,000 is what was borrowed What if Jeff Hunt had typed $300,000 How much money do we pay back If Steve Sandoval comes after Jim Schaefer for $300,000 Can Jim Schaefer say Wait a minute I borrowed $30,000 No the loan document says $300,000 That's what you have to pay And if you don't pay We're going to foreclose Or we're going to try To take your machinery Well that's a mistake Jeff Hunt typed an extra zero Sorry we have a piece of paper That says $300,000 You can't introduce evidence And what we think the legislature Was trying to protect I don't think Mr. Howard would suggest that Now Jeff Hunt Who was the originating loan officer Was at the bank At the end of December 2005 When the repossession occurred He and Steve Sandoval worked together Jeff Hunt left the bank And went to a different institution After the first of the year When I asked Steve Sandoval If Jeff Hunt was an honest person He said yes The fact of the matter is If the powers that be at the Central Bank Had the same integrity As Jeff Hunt did We wouldn't be here Now Mr. Howard mentioned The Snorkel case About the bank and the insurance If we keep the facts of that in mind We can easily distinguish And explain the difference Between a modification and a correction In the Nordstrom case The loan documents required The borrower to get insurance To insure his collateral Nobody disputes that It was the obligation of the borrower To get insurance After the fact the banker comes along And suggests he could secure the insurance At a lower price The borrower did not As fate would have it The banker did not get the insurance A fire occurred The collateral was destroyed The ability to repay the loan Was compromised And the bank instituted a suit On its note And when the borrower suggested That he had a defense Because Mr. Banker said He would get the insurance There was a clear attempt To modify what was in fact No modification The borrower was attempting To modify what the agreement was That would certainly invoke The protection of the Illinois Credit Agreement Act How does that differ from our case? Our case, this instrument Never did represent What the parties had as an agreement And nobody disputes that The agreement between these parties Was that the collateral Was pledged to secure The repayment of one loan Nobody disputes it And all we're suggesting is Let's have the document Reflect what the parties Really did Therein lies the difference We're not attempting to modify A contract that was one way And we want it another way We simply want the document To reflect what the parties agreed That's the purpose In fact that was the purpose Of our original and amended complaint It was a declaratory judgment action Because we didn't seek Reformation, well yes we did In the context of an action Of a declaratory judgment At the bank's request We had to change that To an action for damages Because the bank argued This is no longer an action For declaratory because We sold the equipment If you have a remedy It's one for damages at law Well Judge Howard agreed with that Over our objection The trial court neared On a number of grounds In granting the motion For summary judgment It doesn't promote the judicial Or the legislative policy That the legislature had in mind When it adopted this statute And if this court sustains The trial court You will make fact out of fiction And I don't think that's what The legislature intended in this case On these foreclosure actions Does the bank have judgments That were provided And some land was conveyed back To satisfy all of that debt So that's all gone That's gone Okay, thanks Okay, thank you both For your arguments here today The matter will be taken Under advisement